```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
PETER BARLETTA,                                                 :
                                                                :
                            Plaintiff,                          :
                                                                :
             -against-                                          :   **MEMORANDUM AND ORDER**
                                                                :   **13-CV-02480 (DLI) (ST)**
LIFE QUALITY MOTOR SALES INC., JAMES                            :
GIORDANO, CARMINE ABRUZZO, JOHN                                 :
DOES 1-5, JANE DOES 1-5, and ABC CORPS.                         :
1-5, (fictitious names representing one or more                 :
unknown defendants),                                            :
                                                                :
                            Defendants.                         :
----------------------------------------------------------------x
```
**DORA L. IRIZARRY, Chief United States District Judge:**

Plaintiff Peter Barletta ("Plaintiff" or "Barletta") commenced the instant action in New Jersey Superior Court, Middlesex County, against defendants Life Quality Motor Sales Inc. ("Life Quality"), James Giordano ("Giordano"), Carmine Abruzzo ("Abruzzo"), John Does 1-5, Jane Does 1-5, and ABC Corps. 1-5 (collectively, the "Defendants"), alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of N.Y. Exec. Law, Article 15, § 296(6), New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.*, and the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"). (*See* Complaint ("Compl."), Ex. A to Defs.' 56.1, Dkt. Entry No. 39.)[1] Defendants removed the action to this Court and now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*See* Mem. of Law in Support of Defs.' Mot. For Summ. J. ("Defs.' Mem."), Dkt. Entry No. 38.) Plaintiff opposes Defendants' motion. (*See* Pl.'s Mem. in Opp. to

---
[1] Citations to "Defs.' 56.1" refer to Defendants' Local Rule 56.1 Statement of Undisputed Facts, Dkt. Entry No. 38. Citations to "Pl.'s Resp. 56.1" refer to Plaintiff's Response to Defendants' Local Rule 56.1 Statement of "Undisputed" Facts, Dkt. Entry No. 39. Citations to "Pl.'s 56.1" refer to Plaintiff's Local Rule 56.1 Statement of Additional Material Facts, Dkt. Entry No. 39.

Defs.' Mot. For Summ. J. ("Pl.'s Mem."), Dkt. Entry No. 39.) For the reasons set forth below, Defendants' motion is granted and this action is dismissed in its entirety.

## BACKGROUND[2]

Life Quality is a family-owned BMW dealership located in Brooklyn, New York. (Defs.' 56.1 ¶ 2; Pl.'s Resp. 56.1 ¶ 2.) Giordano is the president and owner of Life Quality, and Abruzzo is his son-in-law. (Defs.' 56.1 ¶ 2; Pl.'s Resp. 56.1 ¶ 2.) Abruzzo was not Plaintiff's supervisor formally, and the parties disagree on whether Abruzzo had any influence on Plaintiff's termination in 2011. *Id.* Barletta was employed by Life Quality from August 2001 to January 2011. (Defs.' 56.1 ¶¶ 4, 11; Pl.'s 56.1 ¶¶ 2, 31.) At the beginning of his employment as Director of Service, Barletta managed the service and body shop operations and promoted BMW standards. (Defs.' 56.1 ¶ 4; Pl.'s Resp. 56.1 ¶ 4.) His starting salary was $2,000 per week, and he was promoted and given additional responsibilities over the course of his employment. (Defs.' 56.1 ¶¶ 4-7; Pl.'s 56.1 ¶¶ 6-7.) Barletta's compensation varied from 2002 to 2005, depending on the financial health of Life Quality. (Defs.' 56.1 ¶¶ 4-8; Pl.'s 56.1 ¶¶ 8-12.) In 2006, Barletta became Center Operator, second only to Giordano, the owner of Life Quality. (Defs.' 56.1 ¶ 7; Pl.'s 56.1 ¶ 14.)

Beginning in December 2008, Life Quality restructured its payroll, and all managers were asked to take a 15% reduction in their weekly gross pay and commissions to meet the financial downturn. (Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 13.) All managers, with the exception of one, endorsed an acknowledgement agreeing to the reduction in compensation. (Defs.' 56.1 ¶ 8; Pl.'s Resp. 56.1 ¶ 8.) Life Quality terminated the manager who refused the pay reduction. *Id.* Life Quality continued to experience a decline in profits in 2009 and 2010. (Defs.' 56.1 ¶¶ 8, 10; Pl.'s Resp. 56.1 ¶¶ 8, 10; February 20, 2014 Deposition of Peter Barletta ("Barletta Dep."), Ex. C to Defs.'

---
[2] The following facts are undisputed unless otherwise noted.

2

56.1, Dkt. Entry No. 39, at 42, 46-47.)  The parties dispute the extent to which Life Quality's financial hardship was the result of Barletta's managerial actions since Barletta and Giordano oversaw the dealership together.  (Pl.'s Resp. ¶¶ 4, 8.)

On June 29, 2009, BMW North America issued a negative operational review of Life Quality's service department, directly addressed to Barletta, noting a decline in customer retention and technician productivity, operational issues, and other problems.  (Defs.' 56.1 ¶ 9; Pl.'s Resp. 56.1 ¶ 9.)  Giordano and Barletta had multiple conversations regarding the need to address the service department's poor performance.  (*See* June 17, 2014 Deposition of Carmine Abruzzo ("Abruzzo Dep."), Ex. N to Defs.' 56.1, Dkt. Entry No. 38, at 67-69, 71-72.)

In July 2010, in an oral conversation with Giordano, Barletta requested and was granted medical leave for quintuple bypass heart surgery and recuperation.  (Defs.' 56.1 ¶ 12; Pl.'s 56.1 ¶ 20; Barletta Dep. at 90-93.)  While on medical leave, he continued to receive his regular base pay and commission payments from Life Quality and received periodic calls from Giordano and Abruzzo asking about his health.  (Defs.' 56.1 ¶¶ 12-13; Pl.'s Resp. 56.1 ¶¶ 12-13.)  Giordano and Abruzzo did not require or ask Barletta to return to work at any point during these conversations.  (Defs.' 56.1 ¶ 13; Barletta Dep. at 94.)   Barletta returned to work in September 2010 to the same position and title as Center Operator and with the same salary he had prior to taking medical leave.  (Defs.' 56.1 ¶ 14; Pl.'s Resp. 56.1 ¶ 14; Abruzzo Dep. at 64; Barletta Dep. at 98.)  Per a physician's letter, Barletta requested a reduced work schedule to accommodate his cardiac rehabilitation sessions and limitations on tasks requiring him to lift anything heavier than 15 pounds.  (Defs.' 56.1 ¶ 14; Pl.'s 56.1 ¶¶ 25-27; Barletta Dep. at 29-30.)  Life Quality accommodated Barletta's requests.  *Id.*

Life Quality terminated Barletta on January 3, 2011, three days before a disclosed appointment with his cardiologist. (Pl.'s 56.1 ¶¶ 28, 31.) Plaintiff contends that additional medical leave was "foreseeable," but Plaintiff had not made any formal requests with Life Quality seeking further medical leave as of the time of his termination. (Barletta Dep. at 142-43.) Immediately following Barletta's termination, Giordano or Abruzzo performed the duties of Center Operator, and Abruzzo took over as Center Operator a year later. (Defs.' 56.1 ¶ 11; Pl.'s 56.1 ¶¶ 36-37; Abruzzo Dep. at 77-78.) The parties disagree on whether Giordano or Abruzzo, or both, formally took over the duties of Center Operator in the year following Barletta's termination. *Id.*

On December 31, 2012, Barletta filed the instant suit. (*See generally* Compl.) As part of the judgment sought, Barletta requests compensatory and punitive damages, attorneys' fees and costs, and interest. *Id.* On August 12, 2015, Defendants moved for summary judgment on the grounds that: (1) Plaintiff fails to meet his burden of proof as to his N.Y. Exec. Law, NYSHRL, NYCHRL, and FMLA claims; (2) Plaintiff's breach of contract allegations are time-barred, assented to by Plaintiff, or barred by the explicit terms of the employee handbook; and (3) New York law does not recognize a duplicative and separate cause of action for breach of the implied covenant of good faith and fair dealing. (*See* Defs.' Mem. at 1-2.)

## DISCUSSION

I.  **Summary Judgment Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material

fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 202 (2d Cir. 2007) (internal quotations omitted).

A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F. 3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a

verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F. 2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F. 3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

## II. Claims Alleging Violations of the FMLA

The FMLA was enacted "to balance the demands of the workplace with the needs of families" and to "to entitle employees to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of a child, spouse, or parent who has a serious health condition." 29 U.S.C. § 2601(b)(1)-(2). To this end, the FMLA entitles eligible employees "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. §§ 2612(a)(1)(D), (b). "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(A), (B). To qualify as an "eligible employee," the employee must have been employed (1) "for at least 12 months by the employer," and (2) "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

Interfering with, restraining, or denying an employee's rights under the FMLA is unlawful. 29 U.S.C. § 2615(a)(1); *see also Potenza v. City of New York*, 365 F.3d 165, 167 (2d

Cir. 2004) (per curiam). The prohibition against interference also prohibits employers from discriminating or retaliating against an employee from having exercised or attempted to exercise FMLA rights. 29 C.F.R. § 825.220(c); 29 U.S.C. § 2615(a)(2); *see also Potenza*, 365 F.3d at 167. In the Second Circuit, these prohibitions create separate and distinct claims for interference and retaliation under the FMLA. *See Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 175 (2d Cir. 2006); *see also Potenza*, 365 F.3d at 167 (discussing the distinction between interference and retaliation claims under the FMLA). Plaintiff asserts both, and neither claim has merit.

### A. Retaliation

To evaluate a retaliation claim arising under the FMLA, courts use the three-step burden-shifting analysis laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Potenza*, 365 F.3d at 168. To establish a prima facie case of retaliation under the FMLA, Plaintiff must demonstrate that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Id.* The initial burden of establishing a prima facie claim under *McDonnell Douglas* is "minimal." *Debell v. Maimonides Med. Ctr.*, 2011 WL 4710818, at *9 (E.D.N.Y. Sept. 30, 2011) (citing *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000)). Once Plaintiff establishes a prima facie case, the burden shifts to the Defendants to articulate "some legitimate, non-discriminatory reason" for their action. *McDonnell Douglas*, 411 U.S. at 802. If Defendants carry their burden, then Plaintiff must prove by a preponderance of the evidence that Defendants' legitimate reasons were not their true reasons and were merely pretext for retaliation. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The parties do not dispute that Plaintiff's leave was taken in accordance with the FMLA, Plaintiff was qualified for his position, or that he was terminated in January 2011. The dispute centers on the fourth factor, which requires Plaintiff to demonstrate that the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. An inference of retaliatory intent can be established when "there is a basis for a jury to conclude that 'a causal connection [exists] between the plaintiff's protected activity and the adverse action taken by the employer.'" *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (citing *Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003)). When viewing the facts in the light most favorable to the non-moving party, the Court finds that Plaintiff has not satisfied his burden of establishing that his termination occurred under circumstances giving rise to an inference of retaliatory intent.

Plaintiff argues that Defendants' knowledge of his cardiologist appointment on January 6, 2011, discussions of Plaintiff's heart condition between Giordano and Abruzzo, and the temporal proximity between his return to Life Quality and his termination are evidence of circumstances giving rise to Defendants' retaliatory intent.[3] The Court disagrees. First, Defendants' general knowledge of Plaintiff's upcoming cardiologist appointment is insufficient on its own to establish a causal connection between his FMLA leave and his termination. Plaintiff returned to work after his extended medical leave without any diminution in salary, title, or job description. Defendants already were aware of Plaintiff's ongoing cardiac rehabilitation sessions since they accommodated Plaintiff's requests for a modified and flexible work schedule. Indeed, there is no evidence to support the proposition, or reason to believe, that Defendants would act any

---

[3] Plaintiff also baldly asserts that Life Quality and Giordano had a "history of terminating high-salaried, middle-aged employees who had health problems." (Pl.'s Mem. at 14.) The Court finds this argument baseless. Plaintiff has failed to present any evidence, in the form of affidavits, deposition testimony, documentary evidence, or more, upon which a reasonable jury could find that Defendants had a pattern of FMLA retaliation toward other employees of similar age or health conditions. *See* Barletta Dep. at 143-49.

8

differently in reaction to Plaintiff's impending appointment than to Plaintiff's previous medical appointments. Second, Plaintiff baldly states, without more, that Abruzzo "admitted that he and Giordano discussed plaintiff's heart condition" and relies on the mere discussion as another example of a circumstance giving rise to an inference of discrimination. (Pl.'s Mem. at 13.) Yet, Abruzzo's testimony discredits this argument wholly. (*See* Abruzzo Dep. at 74-75 ("What was discussed was that the termination, once again, had nothing to do with his heart surgery, [it] was strictly based on the profitability of the company.") There is no evidence that the discussion of Plaintiff's health and general knowledge of Plaintiff's upcoming appointment were motivating factors in the decision to terminate Plaintiff's employment.

Third, temporal proximity alone is insufficient to create a triable issue of fact as to pretext. *See Simpson v. New York State Dept. of Civil Servs.*, 166 F. App'x 499, 502 (2d Cir. 2006). While close temporal proximity can give rise to an inference of retaliation, the nearly four-month gap between Plaintiff's FMLA leave and his termination is insufficient. *See, e.g., O'Reilly v. Consol. Edison Co. of New York*, 173 F. App'x 20, 22 (2d Cir. 2006) ("[T]he three month [sic] gap between [Plaintiff's] FMLA leave and her termination is not sufficient to give rise to an inference of retaliation . . . "); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (finding that a four-month interval between the protected activity and alleged retaliation is insufficient to establish causal connection necessary to support a retaliation claim); *Benjamin v. Health & Hosps. Corp.*, 2009 WL 2959622, at *10 (E.D.N.Y. Sept. 11, 2009), aff'd, 394 F. App'x 829 (2d Cir. 2010) ("[T]o establish causation through temporal proximity, the intervening period must be 'very close'") (citation omitted); *Kim v. Goldberg, Weprin, Finkel Goldstein*, LLP, 862 F. Supp.2d 311, 319 (S.D.N.Y. 2012) ("[D]istrict courts within the Second Circuit have consistently held that the passage of more than two to three months between the

protected activity and the adverse employment action militates against an inference of causation") (citation omitted). *Cf. Cooper v. New York State Nurses Ass'n*, 847 F. Supp.2d 437, 448 (E.D.N.Y. 2012) ("[P]laintiff's [termination] less than two months after returning from her FMLA leave . . . is sufficient to establish" an inference of retaliatory intent); *Polanco v. Active Ret. Cmty., Inc.*, 2016 WL 792408, at *4 (E.D.N.Y. Feb. 29, 2016) (agreeing with Magistrate Judge's Report and Recommendation that plaintiff's termination, "which occurred just days later, was enough to raise an inference of retaliatory intent").

Even assuming, *arguendo*, that Plaintiff established a prima facie case of FMLA retaliation, Defendants proffered "legitimate, non-discriminatory reason[s]" for terminating Plaintiff. Plaintiff's performance as Center Operator led to negative performance reviews of the parts and services department by BMW North America, long before he took his medical leave, and Life Quality faced declining profits in the economic downturn. (Defs.' Mem. at 12-13; Barletta Tr. at 142-43; Abruzzo Dep. at 70-75.) Plaintiff was not replaced by a new hire after his termination as Giordano and Abruzzo took over Plaintiff's responsibilities. Such reasons are sufficient to shift the burden back to Plaintiff to show that Defendants' stated reasons are pretext for discrimination and that his termination was, "more likely than not, motivated in whole or part by discriminatory reasons." *See McGuiness v. E. W. Indus.*, 857 F. Supp.2d 259, 265 (E.D.N.Y. 2012) (citing *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142-43 (2000)).

However, Plaintiff has not set forth evidence on which a factfinder reasonably could conclude that the legitimate and non-discriminatory explanations given by Defendants for Plaintiff's termination were mere pretexts. Instead, he offers only conclusory assertions, unsupported by the record, that his termination was a direct reaction to his taking FMLA leave and his age. When asked what led him to believe Defendants terminated him because of his age

and health condition, Plaintiff could only answer, "[t]hey fired me" and "[t]hat's it." (Barletta Dep. at 144-45.) Courts in discrimination cases should not serve as "super-personnel department[s]," reviewing employer disciplinary decisions. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001); *see also Dabney v. Christmas Tree Shops*, 958 F. Supp.2d 439, 454 (S.D.N.Y. 2013). "Only where an employer's business decision is so implausible as to call into question its genuineness should [a] [c]ourt conclude that a reasonable trier of fact could find that it is pretextual." *Dabney*, 958 F. Supp.2d at 454 (citation omitted).

Additionally, Plaintiff conceded that the company had financial difficulties beginning in 2009. (Barletta Dep. at 162 (stating that Plaintiff's relationship with Giordano changed when "the company, you know, [had] financial difficulties").) Barletta does not rebut the critical review from BMW North America and offers no evidence that improvements were made under his leadership, only suggesting, at best, that such problems were jointly the fault of the business owner, Giordano. (*See* Pl.'s Resp. 56.1 ¶ 9; *see also* Barletta Dep. at 133-34 (acknowledging "there were some operating issues and some policy and some process issues developing how you run a new facility, yes").) It is not the responsibility of the Court to second-guess Plaintiff's performance absent affirmative evidence—of which Plaintiff has offered none— that Defendants' business reasons for terminating Plaintiff were not in good faith. *See Dister v. Continental Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) (holding that "it is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal," and "the reasons tendered" by the company "need not be well-advised, but merely truthful"); *Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 623 (2d Cir. 2012).

Moreover, the record shows that Plaintiff's request for FMLA leave for heart surgery and recuperation was granted without incident, and Plaintiff was restored to his position fully when

he returned to Life Quality. Defendants accommodated Plaintiff's requests for a modified work schedule and continued to pay Plaintiff his full salary and commission for the nearly four months after his return until his termination. Plaintiff even concedes that Giordano and Abruzzo never pressured or required him to return to work earlier and that their questioning of Plaintiff as to when he planned to return to a full time schedule was "a normal question to ask somebody that's on a reduced schedule" and "I would do the same thing." (*See* Barletta Dep. at 93-98, 103.) When asked about Abruzzo's alleged commentary concerning Plaintiff's age, Plaintiff only offered unsupported, anecdotal, third party comments from colleagues at Life Quality, which are insufficient to establish an inference of retaliation. *Id.* at 150-53; *see, e.g., Giambattista v. Am. Airlines, Inc.*, 584 Fed. Appx. 23, 25-26 (2d Cir. 2014) (finding "stray comments" from coworkers insufficient to raise a reasonable inference of employer's disability discrimination).

This evidence, along with Life Quality's financial performance and BMW North America Inc.'s poor reviews of the parts and services department, does not support an argument for pretext. Mere conclusory allegations of discrimination are insufficient to defeat Defendants' motion for summary judgment. *See Sanghvi v. Frendel*, 242 F.3d 367 (2d Cir. 2000). Accordingly, summary judgment is granted in Defendants' favor on Plaintiff's FMLA retaliation claim.

### B. Interference

To prevail on a claim of interference with FMLA rights, Plaintiff must establish that: 1) he is an eligible employee under the FMLA; 2) Defendants are an employer as defined by the FMLA; 3) he was entitled to take leave under the FMLA; 4) he gave notice to the Defendants of his intention to take leave; and 5) he was denied benefits to which he was entitled under the FMLA. *Graziadio v. Culinary Inst. of Am.*, 2016 WL 1055742, at *6 (2d Cir. 2016). A plaintiff

bears the burden of establishing a prima facie case for interference claims, and the court need not consider the issue of the employer's intent. *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 176 (2d Cir.2006). The parties do not dispute that Plaintiff meets the first three elements. This Court's analysis thus focuses on whether Plaintiff gave proper notice of his intention to take additional FMLA leave and whether Defendants denied Plaintiff benefits to which he was entitled under the FMLA.

Plaintiff argues that Defendants were on notice of his intention to take FMLA leave because they were aware of Plaintiff's upcoming cardiologist appointment and his reduced work schedule. The Court disagrees. There is a clear distinction between Plaintiff's future work schedule and his intention to take FMLA leave. The former, to be determined by Plaintiff's cardiologist visit, signals an intention to continue working, whether full time or part time, and is the opposite of an intention to take FMLA leave. Indeed, Plaintiff concedes that his discussions with Giordano centered on his ability to return to a full time schedule and that Giordano had "no problems" with his continued need to work on a reduced work schedule. (*See* Barletta Dep. at 98-102.) Plaintiff planned to ask his cardiologist whether he could return full time, and Giordano's questions about his ability to return full time was "a normal question to ask somebody that's on a reduced schedule." *Id.* These conversations are distinct from Plaintiff's potential requests for additional FMLA leave. Defendants were not on notice that Plaintiff planned to request additional leave for his health condition, and Plaintiff, therefore, cannot establish that Defendants denied him benefits he never requested in the first place. That Plaintiff's termination necessarily prevented him from taking future FMLA leave, which he had not yet requested and had no plans to request, does not create an issue of fact as to whether Defendants attempted "to interfere with, restrain, or deny the exercise of or the attempt to

exercise, any right provided under" the FMLA. *See* 29 U.S.C. § 2615(a)(1); *Thomsen*, 483 F. App'x at 622-23.

Accordingly, Plaintiff has failed to establish a prima facie case of FMLA interference. Summary judgment is granted in Defendants' favor on Plaintiff's FMLA interference claim.

### III. State Claims

As to Plaintiff's remaining state law claims, which include breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of N.Y. Exec. Law, NYSHRL, and NYCHRL, the "traditional values of judicial economy, convenience, fairness, and comity" weigh in favor of this Court declining to exercise supplemental jurisdiction when all federal law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having granted summary judgment in Defendants' favor on the federal claims under the FMLA, the Court declines to exercise supplemental jurisdiction with respect to Plaintiff's remaining state claims. *See* 28 U.S.C. § 1367(c)(3); *see also Sadallah v. City of Utica*, 383 F.3d 34, 40 (2d Cir. 2004) ("[B]ecause plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court. The district court should therefore decline supplemental jurisdiction over any state law claims."); *O'Leary v. Town of Huntington*, 2012 WL 3842567, at *15 (E.D.N.Y. Sept. 5, 2012); *Missick v. City of New York*, 707 F. Supp.2d 336, 354–55 (E.D.N.Y. 2010).

### CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted and this action is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
September 12, 2016

/s/
DORA L. IRIZARRY
Chief Judge